UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-62350-CV-MORENO
(17-60136-CR-MORENO)
MAGISTRATE JUDGE REID

BRANDON NATHAN FORBES,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE

### I.    Introduction

This matter is before the Court on Movant's *pro se* motion to vacate, filed pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence entered following a guilty plea in Case No. 17-60136-CR-Moreno. [CV-ECF No. 1].[1] Movant was convicted of distribution of a controlled substance for purpose of unlawful importation, in violation of 21 U.S.C. §§ 959(a) and 960(b)(2)(G). [*See* CR-ECF No. 44].

---

[1] Citation "CR-ECF No. ___" references docket entries in the underlying criminal Case No. 17-60136-CR-Moreno." Citation "CV-ECF No. ___" references docket entries in the instant federal habeas case.

This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-2; and Rules 8 and 10 Governing Section 2255 Proceedings in the United States District Courts.

The Court has reviewed Movant's motion with supporting memorandum [CV-ECF Nos. 1, 3]; all pertinent portions of the underlying criminal file; the government's response [CV-ECF No. 7]; Movant's reply [CV-ECF No. 12]; and the Presentence Report (PSR), addendum, and statement of reasons (SOR).

For the reasons discussed below, the § 2255 motion should be DENIED.

## II.   Claims

Construing the § 2255 motion liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Movant raises one ineffective assistance of counsel claim for failure to request and argue that Movant was eligible for a minor role adjustment pursuant to U.S. Sentencing Guidelines Manual § 3B1.2 (U.S. Sentencing Comm'n 2016) ("U.S.S.G."). [CV-ECF No. 1 at 4].

Movant seeks to have his sentence vacated and to be resentenced consistent with a minor role adjustment. [*Id*. at 12].

## III.   Relevant Procedural History

### A. *Indictment, Guilty Plea, and Plea Hearing*

Movant, along with a co-defendant, was charged in a three-count Indictment with (Count 1) conspiracy to possess with intent to distribute marijuana onboard a

2

vessel, in violation of 46 U.S.C. § 70506(b); (Count 2) possession with intent to distribute marijuana onboard a vessel, in violation of 46 U.S.C. § 70503(a); and (Count 3) distribution of controlled substance for purpose of unlawful importation, to wit 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 959 (a). [CR-ECF No. 16]. For each count, Movant faced a maximum penalty of forty years in prison. [*Id.* at 6].

The facts of the offense are detailed in the PSR. A United States Coast Guard (U.S.C.G.) cutter encountered a small fishing vessel in international waters some sixteen nautical miles from Miami. [PSR ¶ 3]. The vessel attempted to evade capture necessitating the deployment of a small boat from the cutter. [*Id.*]. U.S.C.G. personnel boarded the vessel and found approximately forty-three packages of marijuana inside the cabin and twelve packages of marijuana inside a cooler, weighing 226 kilograms. [*Id.*, ¶ 5].

Movant and his co-defendant provided post-*Miranda*[2] statements admitting to obtaining the boat with the intent to travel to the Bahamas to obtain marijuana. [PSR ¶ 7]. Movant admitted he borrowed the vessel from his cousin and later confessed he was aware they were traveling to transport drugs expecting $10,000 to $15,000

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

as payment for his role. [*Id*., ¶ 9]. Because Movant was equally culpable, probation did not recommend any mitigating or aggravating adjustments. [*Id*., ¶ 2].

On July 21, 2017, Movant appeared for his plea hearing represented by counsel.[3] [CV-ECF No. 7-1]. During his plea colloquy, Movant affirmed that he wanted to plead guilty, spoke with counsel about his decision, and confirmed he was satisfied with counsel's representation. [*Id*. at 6]. Movant explained his educational background, denied being treated for mental illness, denied being under the influence of any drugs or alcohol, and asserted that no one forced him into entering a guilty plea. [*Id*. at 6-7]. Movant confirmed he understood he was waiving his trial rights as well as certain civil liberties. [*Id*. at 7-8]. Movant confirmed he was pleading guilty to Count 2, was subject to a five-year mandatory minimum, and was not eligible for the "safety valve" because he refused to be debriefed. [*Id*. at 12-14]. The court further informed Movant that he would be subject to more prison time than his co-defendant because his decision to "say nothing" subjected him to a minimum five-year prison term. [*Id*. at 13-14]. Movant confirmed his understanding. [*Id*. at 14]. When asked whether he knowingly and intentionally possessed the drugs with the intent to distribute, Movant responded, "Yes, sir." [*Id*.]. Movant did not plead guilty pursuant to a plea agreement. [*Id*. at 15]. Movant understood he faced a

---

[3] Movant and his co-defendant presented together for the plea hearing to enter a guilty plea and at the sentencing hearing.

maximum sentence of forty years. [*Id*.]. Movant and the government stipulated there was a factual basis for Movant's guilty plea. [*Id*.].

The government presented the factual basis of the offense; and Movant agreed it was accurate. [*Id*. at 16-18]. Movant then pled guilty. [*Id*. at 18-19]. The court found Movant's entered his plea freely, intelligently, and voluntarily; there was a factual basis for the guilty plea; and then adjudicated Movant guilty. [*Id*. at 19].

### B. Sentencing, Final Judgment, and Final Presentence Report

On September 28, 2017, Movant appeared for his sentencing hearing represented by counsel. [CR-ECF No. 7-2]. At the same hearing, Movant's co-defendant was sentenced to thirty-seven months. [*Id*. at 8].

The Court reviewed the PSR confirming Movant's adjusted offense level as 21, criminal history category I, and that he was subject to the five-year mandatory minimum sentence. [*Id*. at 6]. Because Movant refused to be debriefed, he was ineligible for the "safety valve" and was subject to the five-year sentence. [*Id*. at 6-7, 9]. At that point, counsel stated that Movant changed his mind and was ready to be briefed if given the opportunity. [*Id*. at 9]. After some debate, the court permitted discussions between the parties. [*Id*. at 10-14]. The government submitted to the court it was satisfied with Movant's statement. [*Id*. at 14]. Accordingly, Movant's offense level was reduced to a level 19 with a criminal history category of I, resulting in a guidelines range of thirty to thirty-seven months in prison, now less than his co-

defendant. [*Id*.]. Counsel moved to vacate the guilty plea because a "safety valve" was not applicable to a Title 46 offense; thus, a guilty plea to the Title 21 offense was necessary. [*Id*. at 15]. The court explained the change, that Count 3 was previously dismissed and then explained the factual basis for Count 3. [*Id*. at 16]. Movant then pled guilty to Count 3. [*Id*.]. The court explained the difference between Count 2 and Count 3 and that the "safety valve" applied to Count 3; and Movant confirmed his understanding and that he was pleading guilty to Count 3. [*Id*. at 17].

Again, the court conducted a Rule 11 colloquy with Movant by first reiterating that Movant was waiving his right to trial, the right to appeal, may also lose certain civil liberties as a result of his plea, and would be subject to deportation. [*Id*. at 17-18]. Movant confirmed his understanding, discussed his options with his counsel, and expressed he wanted to plead guilty. [*Id*. at 18]. Movant understood he faced a maximum penalty of forty years in prison, supervised release for up to a life term, a special assessment of $100, and a fine of $5,000,000. [*Id*. at 19]. According to Movant, no one forced, threatened, or promised him anything other than the "safety valve." [*Id*. at 19-20]. Next, Movant denied having a history of mental illness, use of drugs, alcohol, or medications that would affect his thinking. [*Id*. at 20]. Movant pled guilty and confirmed he was sure of his decision. [*Id*. at 21]. Again, the court determined Movant's plea was "freely and voluntarily entered" and adjudicated him guilty. [*Id*.].

The court stated that it would be necessary to modify the PSR to reflect the change in plea and to include the "safety valve" provision and explained Movant's guideline range was now thirty to thirty-seven months in prison. [*Id*. at 22]. There was discussion that Movant and the co-defendant were similarly situated but Movant did not have a criminal history nor an outstanding warrant. [*Id*.]. Counsel argued there was a factual distinction between the two because the co-defendant received an enhancement for piloting the vessel. [*Id*. at 23]. The government reminded the court that the boat came from Movant's cousin, as did the plan. [*Id*. at 23]. The court permitted Movant to make a statement. [*Id*. at 24]. Movant apologized, described certain personal experiences and challenges, and accepted full responsibility for his actions. [*Id*. at 24-28]. The court considered Movant's statement, reiterated his eligibility for the "safety valve" provision, and sentenced Movant, within the guidelines, to thirty-six months in prison. [*Id*. at 28]. There were no objections; and Movant stated he was satisfied with counsel's representation was not forced or coerced into his plea. [*Id*. at 29]. The court found Movant entered into his agreement "freely and voluntarily." [*Id.*].

Ultimately, the PSR was amended to reflect the agreements at the sentencing hearing as follows. Movant's base offense level is 24 because the offense involved at least 100 kilograms but less than 400 kilograms of marijuana. [*Id*., ¶ 18]. Movant qualified for the "safety valve" provision; accordingly, the offense level was

7

decreased by two levels. [*Id.*, ¶ 19]. Movant did not receive any other adjustments; thus, his adjusted offense level is 22. [*Id.*, ¶ 23]. Because Movant accepted responsibility, the offense level was decreased by two levels pursuant to § 3E1.1(a) and an additional one level for assisting the authorities. [PSR ¶¶ 25, 26]. Therefore, Movant's total offense level is 19. [*Id.*, ¶ 27].

Movant had a total of zero criminal history points, which establishes a criminal history category of I. [*Id.*, ¶ 30]. Based on a total offense level of 19 and a criminal history category of I, Movant's guideline imprisonment range is thirty to thirty-seven months, followed by a period of supervised release between two and five years, a special assessment and fines. [*Id.*, ¶¶ 62, 64, 68, 69].

## IV.    Threshold Issue – Timeliness

The parties correctly agree Movant's motion is timely filed.

## V.    Applicable Law

### A.  *Standard of Review of Section 2255 Motions*

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255.

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under § 2255. This is because "[r]elief under 28 U.S.C. § 2255 is reserved for

9

transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (internal quotations omitted)).

If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment). Under § 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

## B. *Ineffective Assistance of Counsel Principles*

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Harrington v. Richter*, 562

U.S. 86, 104 (2011). If the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *Strickland*, 466 U.S. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). To establish prejudice, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant, therefore, must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

It is beyond dispute that habeas petitioners and movants bear the burden of proof in habeas proceedings. *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008); *Hill v. Linaham*, 697 F.2d 1032, 1036 (11th Cir. 1983). *See also* 28 U.S.C. § 2255(b), (e); Rule 2 and 4 of the Rules Governing Section 2255 Proceedings. This

axiom is so well-settled that *Strickland* itself placed the burden of proof on habeas litigants, who, like Movant, seek to invoke the Sixth Amendment doctrine. *See generally Strickland*, 466 U.S. at 695-96; *Shiver v. United States*, 619 F. App'x 864, 865 (11th Cir. 2015). Thus, by requiring habeas litigants to bear the burden of showing constitutional error, criminal proceedings are treated as "valid until proven otherwise." *Occhicone v. Crosby*, 455 F.3d 1306, 1310 (11th Cir. 2006).

In fact, federal courts regularly deny ineffective assistance of counsel claims on the basis that the allegations are too general, too conclusory, or too vague to warrant relief. *See, e.g., Price v. Allen*, 679 F.3d 1315, 1325 (11th Cir. 2012) (reaching this conclusion in a § 2254 context). Denying on this basis is appropriate because, unlike the "notice pleading" standard authorized under Fed. R. Civ. P. 8, a "heightened pleading" requirement exists in § 2254 and § 2255 proceedings. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). To meet this heightened pleading standard, of course, the habeas petition or motion to vacate must be specific on factual matters. *See id*. Bare, conclusory, allegations of ineffective assistance do not satisfy *Strickland*. *See Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320 (11th Cir. 2012); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

*C. Guilty Plea Principles*

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (table); *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003), attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986).

13

To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *Id.*; *see also, United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005) (*per curiam*). In other words, a voluntary and intelligent plea of guilty made by an accused person must therefore stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. *Brady v. United States*, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. *See Santobello v. New York*, 404 U.S. 257 (1971).

Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

## VI.    Discussion

Movant claims that counsel was ineffective for failing to request and argue Movant's eligibility for a minor role adjustment. [CV-ECF No. 1 at 4]. The government asserts that Movant's claim is conclusory and refuted by the record.

14

[CV-ECF No. 7 at 9]. In his reply, Movant maintains that he should have qualified for the minor role adjustment because the court must find or he must admit that he had a proprietary interest in transporting the marijuana, that he only expected to receive $10,000 where the value of the marijuana exceeded $500,000, and may have assisted in obtaining the boat and towing it to loading point in exchange for the fee and "is begging for a minor role." [CV-ECF No. 12 at 2-3]. Therefore, Movant insists that counsel was required to argue for a minor role reduction. [*Id*. at 4]. Movant maintains his role was minor ($10,000 payment) when compared with his co-defendant's compensation – 50 pounds of marijuana in exchange for the criminal activity. [*Id*. at 4]. Movant's claim fails because counsel is not required to raise meritless issues.

A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.1(b) cmt. n.5. A district court should consider two principles when applying this provision: "first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing; and, second, her role as compared to that of other participants in the relevant conduct." *United States v. De Varon*, 175 F.3d 930, 940 (11th Cir. 1999) (en banc). "The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants."

*Id.* at 944. In the context of a drug courier, "examples of some relevant factual considerations include: amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." *Id.* at 945.

Amendment 794, which went into effect on November 1, 2015, provides additional guidance to the application of the minor role provision:

> In determining whether to apply [a mitigating role] adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)   the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)   the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G., App. C, Amend. 794. Together, *De Varon* and Amendment 794 create a non-exhaustive list of factors for courts to consider. *See United States v. Cruickshank*, 837 F.3d 1182, 1193-94 (11th Cir. 2016).

16

Accordingly, Movant's claim oversimplifies the true issues. His assertion that simply occupying a lesser role than that of his co-defendant translates into a minor role adjustment is insufficient. As narrated above, the court inquired as to what the sentence should be. The government explained Movant and his co-defendant were similarly situated, both knew of the purpose of the trip. Moreover, Movant's counsel argued the factual distinction that the co-defendant was more culpable as the driver of the vessel as evidenced by co-defendant's role enhancement. More importantly, Movant's statement in the instant motion to vacate is not only contradictory but is controverted by Movant's own statements in the record.

First, Movant asserts in his § 2255 motion that *he did not* participate in the loading of the marijuana but also admits he was to be paid $10,000 for his assistance. [CV-ECF No. 1 at 4]. In his memorandum, he claims that "all that [he]…did in this crime was to drive the van which towed the vessel to its point of departure…[and] did not participate in loading the marijuana" and his "presence [on the vessel was more of a joy ride" for which he was to be paid $10,000. [CV-ECF No. 3 at 2]. Yet, Movant clearly admitted his role in post-*Miranda* statements: he obtained the boat from his cousin with the intent to travel to the Bahamas to obtain marijuana, for which he expected payment of at least $10,000 for his role. [PSR ¶¶ 7, 9]. On the record and under oath at his plea hearing, Movant admitted he knowingly and intentionally possessed the drugs with the intent to distribute. [CV-ECF No. 7-1 at

17

14]. At his sentencing hearing, Movant made a voluntary statement to the court accepting full responsibility for his actions. [*Id*. at 24-28].

Now, in his reply, he shifts his assertion made in his § 2255 and memorandum motion and admits "he may have assisted in obtaining the boat and towing same to the loading point, was part of the fee he was to be paid as [a] motorboy or in this case a [']conductor[']…movant *did play* these roles." [CV-ECF 12 at 3].

Counsel did present the issue of the differences in role. Yet, even if counsel did not make a more explicit argument for a role reduction, counsel is not required to raise meritless objections. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2007). Movant clearly understood the scope and structure of the criminal activity, acquired the boat from a family member for the transportation the marijuana (with a street value of $500,000), towed it to the loading point, and had a proprietary interest of between $10,000 and $15,000 for his participation. Movant's role was not minor or minimal. At his plea and sentencing hearings, Movant agreed with the government's characterization of his conduct. Finally, Movant cannot demonstrate his statements made under oath at his plea colloquy were false. *Rogers*, 848 F.2d at 168. Therefore, Movant's guilty plea must stand. *Brady*, 397 U.S. at 748.

Movant cannot satisfy both prongs of *Strickland*. Counsel was not ineffective to make further argument that Movant was entitled to a minor role adjustment

because the argument would have been meritless. Accordingly, Movant's claim fails and should be DENIED.

## VII.    Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). *See also Townsend v. Sain*, 372 U.S. 293, 307 (1963); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (holding that § 2255 does not require that the district court hold an evidentiary hearing every time a Section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

Where, as here, there are absolutely no facts offered to support Movant's claims, the Court does not need to conduct an evidentiary hearing.

## VIII.   Certificate of Appealability

"A certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows…that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, in view of the entire record, the Court should deny a certificate of appealability. If Movant disagrees, he may so argue in any objections filed with the District Court Judge. *See* Rule 11(a), Rules Governing § 2255 Proceedings ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## IX.   Recommendations

Based on the foregoing, it is recommended that the motion to vacate be DENIED on the merits, that no certificate of appealability issue, and, that this case be CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de novo* determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

SIGNED this 9th day of July, 2020.

_____

UNITED STATES MAGISTRATE JUDGE

cc:   Brandon Nathan Forbes
      16044-104
      D. Ray James Correctional Institution
      Inmate Mail/Parcels
      Post Office Box 2000
      Folkston, GA 31537
      PRO SE

      Breezye Telfair
      U.S. Attorney's Office
      11200 NW 20th Street, Suite 101
      Miami, FL 33172
      305-715-7644
      Fax: 305-715-7639
      Email: Breezye.Telfair@usdoj.gov